IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Charles A. BOYLE, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Charles A. BOYLE, Respondent.

Supreme Court

*No. 2012AP2322–D.—Decided September 16, 2015.*

2015 WI 90

(Also reported in 869 N.W.2d 475.)

544

¶ 1. PER CURIAM. We review the report of the referee, Attorney Michael F. Dubis, recommending that Attorney Charles A. Boyle's license to practice law in Wisconsin be suspended for a period of 90 days and that he be required to pay the full costs of this disciplinary proceeding, which were $15,453.40 as of February 4, 2014. Because no appeal has been filed, we proceed with our review of the referee's report and recommendation pursuant to Supreme Court Rule (SCR) 22.17(2).[1]

¶ 2. The standard we employ to review a referee's report and recommendation in an attorney disci-

---

[1] SCR 22.17(2) provides:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

plinary case is well-established. We affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. *In re Disciplinary Proceedings Against Inglimo,* 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 3. Given Attorney Boyle's failure to answer or otherwise respond in a timely manner to the amended complaint filed by the Office of Lawyer Regulation (OLR) and the referee's resulting declaration of a default, we conclude that Attorney Boyle committed the five counts of misconduct arising out of his actions in attempting to represent a widow in a Racine County civil action. We choose, however, not to address at this time the other five counts alleged in the OLR's amended complaint arising out of Attorney Boyle's actions in a case that was litigated in the United States District Court for the Northern District of Illinois (the Northern District Court). We therefore dismiss those counts. In light of the unique facts of this case, Attorney Boyle's lack of prior discipline in this state, and the reduced number of ethical violations, we believe that a public reprimand is sufficient to convey to Attorney Boyle the seriousness of his misconduct and to deter him from similar actions in the future. Finally, in light of the facts that the drafting of the amended complaint was required due to the OLR's error and that there should have been no need for an extensive "prove-up" hearing after a declaration of default, we reduce the requested cost amount that

548

Attorney Boyle must pay by 40%, which will result in a cost assessment of $9,272.04.

¶ 4. Attorney Boyle was admitted to the practice of law in Illinois in November 1966. According to one of his filings, which the OLR did not dispute, beginning in 1967 Attorney Boyle served for a number of years as an Assistant United States Attorney in the Northern District Court, which included trying cases on behalf of the United States. He was admitted to the general bar of the Northern District Court in 1974. He has subsequently engaged in the private practice of law in Chicago.

¶ 5. Attorney Boyle was granted admission to the practice of law in Wisconsin in June 1985. He has never been the subject of discipline in this state, although his Wisconsin license has been administratively suspended on a few occasions. The last two administrative suspensions (for failure to report continuing legal education (CLE) credits and for failure to pay bar dues) took effect in 2006. As will be discussed in more detail below, Attorney Boyle's license was reinstated in April 2012. His license to practice law in this state currently remains active and in good standing.

¶ 6. On October 24, 2012, the OLR initiated this disciplinary proceeding by filing a complaint alleging nine counts of professional misconduct. Attorney Boyle ultimately responded to the complaint by filing a motion to dismiss. The referee denied the motion to dismiss and set a date for a telephonic scheduling conference. Pursuant to the referee's order, Attorney Boyle filed an answer to the OLR's initial complaint.

¶ 7. Attorney Boyle failed to appear for the telephonic scheduling conference. At this conference the OLR requested the ability to file an amended com-

plaint. The referee subsequently entered a written order allowing the OLR to file an amended complaint by June 30, 2013, and requiring Attorney Boyle to file an answer to the amended complaint within 20 days after service.

¶ 8. Before the OLR filed its amended complaint, however, Attorney Boyle filed a second motion to dismiss. During a subsequent telephonic conference, the referee asked Attorney Boyle whether he would withdraw his second motion to dismiss since the amended complaint had not yet been filed, which rendered the motion to dismiss premature. Attorney Boyle responded that he would not withdraw the second motion. He stated during the telephone conference that the referee should do whatever he wanted with the second motion to dismiss. When asked whether he intended to file a new answer to the amended complaint, Attorney Boyle indicated that he did not intend to do so. Following the telephonic conference, the referee issued a written order denying Attorney Boyle's second motion to dismiss and directing him to file an answer to the amended complaint within 20 days after service.

¶ 9. The OLR filed its amended complaint on June 27, 2013. The amended complaint contained essentially the same allegations as the original complaint. The primary difference related to the ethical rules which Attorney Boyle was alleged to have violated in the case in the Northern District Court. The original complaint had alleged in connection with that case that Attorney Boyle had violated certain provisions of the Wisconsin Rules of Professional Conduct for Attorneys (the Wisconsin ethical rules). Because the alleged misconduct had occurred in a federal court in another state, the amended complaint alleged violations of the Northern District Court's ethical rules

550

rather than the Wisconsin ethical rules.[2] Because of the change in the applicable law, the amended complaint also broke out some allegations into an additional count. Thus, the amended complaint contained ten counts of alleged misconduct rather than the nine counts contained in the original complaint.[3]

¶ 10.   The OLR alleged and the referee found that the OLR had served a copy of the amended complaint on Attorney Boyle via email and first-class mail to the Chicago address he had listed on his earlier filings. Attorney Boyle subsequently alleged that he never received the amended complaint at the time it was filed.

---

[2] SCR 20:8.5(a) provides in part that a lawyer licensed to practice law in this state is subject to this court's disciplinary authority regardless of where the lawyer's conduct occurs. SCR 20:8.5(b) contains rules for determining which jurisdiction's ethical rules apply to an attorney's conduct. Where the conduct at issue occurred in connection with a matter pending before a tribunal, the proper ethical rules to apply are those of the jurisdiction in which the tribunal is located, unless the tribunal itself has promulgated rules specifying what ethical rules apply to conduct that is connected to a matter pending before it. SCR 20:8.5(b)(1). In this instance, the Northern District Court has at all times established rules of professional conduct for attorneys appearing before it. Thus, for most of the counts relating to the Northern District Court matter, the amended complaint alleges violations of the ethical rules adopted by the Northern District Court.

[3] The preparation and filing of the amended complaint took several months to complete because counsel for the OLR believed that since the amended complaint would be alleging violations of different rules of professional conduct, each of the modified counts containing references to the Northern District Court ethical rules required a new finding of probable cause to proceed by the Preliminary Review Committee (PRC). Thus, the OLR's counsel waited until the PRC met and approved the modified counts before filing the amended complaint.

¶ 11. On July 29, 2013, the OLR filed a motion for default against Attorney Boyle. Shortly after the filing of the default motion, Attorney Boyle asked counsel for the OLR to send a copy of the amended complaint to him, but that did not occur for several weeks.

¶ 12. The referee then sent out a notice of a "prove-up" hearing on the OLR's default motion to take place on September 23, 2013. Although Attorney Boyle did not file an answer or other response to the amended complaint, he did file two motions between the filing of the OLR's default motion and the "prove-up" hearing. The first motion was a motion for summary judgment. The second motion, served four days and filed three days prior to the "prove-up" hearing, sought to vacate any finding of default and to strike the hearing on the OLR's default motion. In this second motion, Attorney Boyle asserted that he had never received a copy of the OLR's amended complaint and therefore had not responded to it. Attorney Boyle at this time also served a voluminous document request on the OLR, asking for the OLR to provide the requested documents within three days (i.e., prior to the "prove-up" hearing).

¶ 13. At the hearing on September 23, 2013, there was an extended dialogue between the referee and counsel regarding what had occurred in the case over the preceding few months and what would transpire at the hearing. While counsel for the OLR acknowledged that Attorney Boyle had communicated to him in early August that he had not received a copy of the amended complaint and that counsel had not sent a copy of the amended complaint until the Friday before the hearing, he asserted that the amended complaint had been properly served via both email and

first-class mail. Nonetheless, counsel for the OLR informed the referee that he was prepared to proceed with an evidentiary hearing on the merits without a declaration of default.

¶ 14. The referee denied both of Attorney Boyle's motions. He concluded that the summary judgment motion should be denied because it was not supported by sufficient affidavits and because it was filed before Attorney Boyle had joined issue on the amended complaint by filing an answer. Despite the OLR's offer to proceed with an unconditional hearing on the merits of its allegations, the referee also denied Attorney Boyle's motion to vacate or avoid a declaration of default and to cancel the hearing on the OLR's default motion.

¶ 15. Although the referee concluded at that point that Attorney Boyle did not have a basis for avoiding a declaration of default, he nonetheless invited the OLR to proceed with witness testimony. Consequently, the OLR presented the testimony of five witnesses, and Attorney Boyle was allowed to cross-examine those witnesses. There was confusion, however, as to what precisely the nature of this evidentiary hearing was and as to the scope of Attorney Boyle's participation.

¶ 16. At the end of the hearing, the referee indicated that he thought Attorney Boyle was in default due to his failure to answer or otherwise respond to the amended complaint in a timely manner. Nonetheless, he asked the OLR to submit another set of proposed findings of fact and conclusions of law, which he said the OLR might need to modify based on the testimony that had been given during the hearing. He also asked the OLR once more to state its recommendation regarding the proper level of discipline. Despite his conclusion or at least his belief that Attorney Boyle was in default, the referee also gave Attorney Boyle an opportunity to

553

respond to the OLR's proposed findings of fact, conclusions of law, and recommendation as to discipline and to file his own findings, conclusions, and recommendation.

¶ 17. Ultimately, after receiving the parties' post-hearing submissions, the referee issued a written order memorializing his denial of Attorney Boyle's two motions and also granting the OLR's default motion. At the same time, he also issued a report and recommendation. Although the report indicated that it was based on a review of the entire record in the case, including the testimony taken at the September 23, 2013 hearing, the referee included a conclusion of law that the OLR was entitled to a declaration of default and a subsequent conclusion that all of the allegations of the amended complaint had been admitted. The findings of fact in the referee's report tracked the allegations of the amended complaint.

¶ 18. The first set of factual findings relate to Attorney Boyle's representation of L.S., who worked for Attorney Boyle and his wife. On August 8, 2008, L.S.'s husband died as a result of a motor vehicle accident that occurred near the border of Racine and Kenosha counties. L.S., who spoke only limited English, initially was represented by Attorney Thomas Durkin, who filed a "Notice of Circumstances of Claim" with the Kenosha County Clerk. Attorney Durkin, however, informed L.S. in August 2009 that he would not represent her in asserting claims arising out of the death of her husband.

¶ 19. L.S. apparently encountered problems finding another attorney who would represent her. Ultimately, at some point prior to March 23, 2011,[4] Attor-

---

[4] On or about March 23, 2011, a translator, who had been working with L.S. and had been informed by L.S. that Attorney

ney Boyle began to represent L.S., which he asserts he did on a pro bono basis after his wife urged him to take on the case to help out L.S.

¶ 20. On August 5, 2011, Attorney Boyle made a telephone inquiry to the Board of Bar Examiners (BBE) about what he needed to do to represent L.S. in a Wisconsin civil action. On that same date the OLR mailed a letter to Attorney Boyle regarding the procedure for petitioning for the reinstatement of his Wisconsin law license, which at the time remained subject to an administrative suspension. It is undisputed that Attorney Boyle subsequently had multiple discussions, both over the telephone and in person, with the BBE director regarding his situation and the ways to address it.

¶ 21. Attorney Boyle also communicated with representatives of the OLR. As a result of those communications, an OLR representative either sent to Attorney Boyle a form for a petition for admission pro hac vice or advised him where he could download such a petition form from the OLR's website.

¶ 22. On August 8, 2011, just before 4:56 p.m., Attorney Boyle began faxing a document entitled "Complaint" on behalf of L.S. to the office of the Racine County Clerk of Circuit Court. The clerk's office received only a partial document, however. Finally, at 5:19 p.m., after the closing time for the clerk's office, Attorney Boyle was able to send a complete document consisting of a 19–page "Complaint" and a facsimile

Boyle was working on her behalf, had a conversation with Attorney Boyle about obtaining documents from Attorney Durkin. The OLR therefore used this evidence as the basis for alleging that Attorney Boyle had begun to provide legal services to L.S. prior to that date. Due to the default, the referee has adopted that allegation as a finding of fact.

555

cover sheet. The clerk's office did not make either of the two documents received on August 8th a part of the official court record.

¶ 23. The next day the Racine County Clerk of Circuit Court spoke with Attorney Boyle over the telephone. She asked him whether time lines were being blown, and Attorney Boyle stated that they were not.

¶ 24. On August 12, 2011, Attorney Boyle filed via facsimile transmission a document designated as an amended complaint with the Racine County clerk's office. This was the first document that the clerk's office included in the official court record. Attorney Boyle did not pay the filing fee for the civil action he was attempting to file until August 15, 2011.

¶ 25. On September 6, 2011, nearly a month after he had first attempted to file a complaint via facsimile transmission, Attorney Boyle filed a copy of a September 2, 2011 letter that Attorney Boyle had sent to the OLR. Enclosed with the letter was a completed Application for Admission Pro Hac Vice, in which Attorney Boyle requested permission to be admitted pro hac vice in order to represent L.S. in the Racine County action.

¶ 26. In the second half of September and early October, the defendants in the Racine County action filed motions to dismiss the complaint and amended complaint filed by Attorney Boyle. The grounds for these motions included the fact that Attorney Boyle had not been licensed to practice law in Wisconsin at the time the complaint and amended complaint had been filed and the lack of a signature by a Wisconsin-licensed attorney under Wis. Stat. § 802.05(1), as well as the complaint being filed after the expiration of the applicable statute of limitations.

¶ 27. On October 11, 2011, Attorney Boyle filed a petition with the clerk of this court for the reinstatement of his Wisconsin law license from his administrative suspensions.

¶ 28. On October 17, 2011, the Racine County circuit court held a hearing on the defendants' motions to dismiss. The hearing was conducted by Reserve Judge Dennis Costello. During the hearing Attorney Boyle admitted that his license to practice law in Wisconsin had not been reinstated and that he was currently suspended. He stated, however, that he had petitioned for pro hac vice admission to represent L.S. He asserted that he had spoken with the BBE director, who indicated that the BBE and this court would have no problem if he filed an application to appear pro hac vice. He also claimed that he had fulfilled the necessary CLE requirements for reinstatement, but that he had not been able to file the reinstatement petition in time for it to be granted before the hearing. He further stated that the BBE director had suggested he should speak to the chief judge in the circuit so he had spoken to Judge Allan Torhorst, who indicated that he would have no problem with the pro hac vice petition, but the petition would have to be considered by the judge assigned to the case. In addition, Attorney Boyle stated that he had also called the OLR, which had sent him a copy of the petition form. He asserted that he had filed that pro hac vice petition by early September. He concluded his statement regarding the pro hac vice petition with the following purported summary of events:

> I believe that's the chronology with respect to the pro hac vice. The Office of Lawyer Regulation approved it,

557

the Office of Attorney Registration[5] approved it, Judge Torhorst said he would approve it subject to the trial judge's discretion, which you know you have, and we've paid the fees.

¶ 29.   Judge Costello, however, responded that he could not in good conscience allow Attorney Boyle to appear pro hac vice in the matter. He noted that Attorney Boyle's Wisconsin law license had been suspended when he had filed the complaint and amended complaint and was still suspended as of the time of the motion hearing. He therefore indicated that Attorney Boyle had initiated a lawsuit without being either reinstated to the practice of law in this state or being granted pro hac vice status and was now asking the court to authorize his actions after the fact.

¶ 30.   After Judge Costello indicated that he would not grant the pro hac vice petition, Attorney Boyle continued to argue the issue and again asserted that the BBE director and the OLR director had signed off on his pro hac vice application and this court had stamped the application. At one point during the ensuing colloquy between Attorney Boyle and the court, Attorney Boyle went so far as to ask what authority the circuit court had to deny his pro hac vice petition.

¶ 31.   Despite Attorney Boyle's continuing argument, Judge Costello was unmoved. He again noted that Attorney Boyle had been licensed to practice law in Wisconsin, but that license was now suspended, and that, in any event, Attorney Boyle had acted before receiving any permission to do so. Judge Costello granted the defendant's motion to dismiss because the

---

[5] Attorney Boyle often used this term when speaking of the BBE.

complaint had been filed by someone who had no authority to practice law in this state.

¶ 32. The law firm of Weigel, Carlson, Blau and Clemens SC (the Weigel firm) then filed a notice of appearance on behalf of L.S. and filed a motion seeking reconsideration of a portion of the circuit court's order dismissing L.S.'s case.

¶ 33. Although the Weigel firm had now appeared on L.S.'s behalf in the Racine County action, Attorney Boyle personally filed a motion for reconsideration of the denial of his pro hac vice petition. In the affidavit accompanying his personal reconsideration motion, Attorney Boyle stated that the BBE director had advised him that by filing a pro hac vice petition he could represent L.S. even though his Wisconsin law license was currently suspended. The affidavit further stated that during a subsequent telephone conversation with the BBE director, he learned that the supreme court rules contain no provision that precludes administratively suspended lawyers from seeking pro hac vice admission on particular cases.

¶ 34. The circuit court heard the reconsideration motion filed by the Weigel firm on January 13, 2012. This hearing was conducted by Judge Michael Nieskes.

¶ 35. At the beginning of the hearing, Judge Nieskes asked Attorney Boyle if his license to practice law in Wisconsin had been reinstated. Attorney Boyle responded that his reinstatement petition was still pending. Judge Nieskes then allowed Attorney Boyle to sit at counsel table, but informed him that he was not counsel of record on the case.

¶ 36. After granting the Weigel firm's reconsideration motion, Judge Nieskes allowed Attorney Boyle to address the court. Ultimately, Attorney Boyle asked for a date on which his personal reconsideration mo-

tion could be heard. Judge Nieskes responded that because Attorney Boyle was not licensed to practice law in this state, he had no legal authority to file motions and the court would not accept filings from him or give him a date to hear any motion until his license had been reinstated.

¶ 37.   Later that same day, counsel for one of the defendants submitted a draft order memorializing the circuit court's oral ruling. On January 18, 2012, Attorney Boyle sent a facsimile transmission to Judge Nieskes proposing an amendment to the draft order. Attorney Boyle's proposed amendment included additional paragraphs that addressed Attorney Boyle's motion for reconsideration of the denial of his pro hac vice petition. Specifically, the proposed amendment stated that Attorney Boyle had been advised by the BBE to file a pro hac vice petition, which was approved and filed by the OLR; that Attorney Boyle's motion for reconsideration had been scheduled for hearing on January 6, 2012, and then rescheduled for January 13, 2012; and that on January 13, 2012, the circuit court summarily denied the reconsideration motion without hearing argument.

¶ 38.   Judge Nieskes refused to amend the draft order as proposed by Attorney Boyle. The written order that he ultimately entered stated that Attorney Boyle had requested the court to schedule a hearing on his reconsideration motion and the court had stated that the reconsideration motion would not be scheduled for hearing until Attorney Boyle's license to practice law in Wisconsin had been reinstated.

¶ 39.   On April 24, 2012, this court issued an order granting Attorney Boyle's petition for the reinstatement of his license to practice law in Wisconsin.

¶ 40. When the OLR subsequently asked Attorney Boyle to respond to its investigation of his conduct in representing L.S., he specifically denied making any misrepresentations and again claimed that his actions in filing the complaint and subsequently seeking pro hac vice admission had been authorized or recommended by representatives of both the BBE and the OLR. Attorney Boyle also made a false statement regarding the sequence of events, stating that at the time he had filed his pro hac vice petition, his petition for reinstatement from his administrative suspensions had been pending before this court.

¶ 41. On the basis of these facts, the referee concluded that the OLR had proven five counts of misconduct. First, by drafting and filing the complaint and amended complaint, by making appearances in hearings before the circuit court, by filing a motion to reconsider the denial of his pro hac vice application, and by submitting a proposed amendment to the draft order arising from the January 13, 2012 hearing, Attorney Boyle engaged in the practice of law while his license to practice law in this state was administratively suspended, in violation of SCRs 10.03(6),[6] 31.10(1),[7]

---

[6] SCR 10.03(6) provides:

Penalty for nonpayment of dues. If the annual dues or assessments of any member remain unpaid 120 days after the payment is due, the membership of the member may be suspended in the manner provided in the bylaws; and no person whose membership is so suspended for nonpayment of dues or assessments may practice law during the period of the suspension.

[7] SCR 31.10(1) provides:

If a lawyer fails to comply with the attendance requirement of SCR 31.02, fails to comply with the reporting requirement of SCR 31.03(1), or fails to pay the late fee under SCR 31.03(2), the

22.26(2),[8] and 20:8.4(f)[9] (Count 1). The referee also found that Attorney Boyle had violated SCR 20:3.3(a)(1)[10] by making multiple false statements of fact to the Racine County circuit court, including that he had begun representing L.S. only two months prior to the expiration of the applicable statute of limitations on August 8, 2011, that the BBE director had recommended and advised him to file a pro hac vice petition as the way to allow him to represent L.S. while

board shall serve a notice of noncompliance on the lawyer. This notice shall advise the lawyer that the lawyer's state bar membership shall be automatically suspended for failing to file evidence of compliance or to pay the late fee within 60 days after service of the notice. The board shall certify the names of all lawyers so suspended under this rule to the clerk of the supreme court, all supreme court justices, all court of appeals and circuit court judges, all circuit court commissioners appointed under SCR 75.02(1) in this state, all circuit court clerks, all juvenile court clerks, all registers in probate, the executive director of the state bar of Wisconsin, the Wisconsin State Public Defender's Office, and the clerks of the federal district courts in Wisconsin. A lawyer shall not engage in the practice of law in Wisconsin while his or her state bar membership is suspended under this rule.

[8] SCR 22.26(2) provides:

An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law.

[9] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[10] SCR 20:3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

his Wisconsin law license was suspended, and that his pro hac vice petition had been endorsed and approved by agencies of this court (Count 3). The referee also found that Attorney Boyle had made a number of other misrepresentations, in violation of SCR 20:8.4(c),[11] including telling the Racine County Clerk of Circuit Court that time limits were not an issue, submitting a proposed amendment to a draft order that contained findings never made by the court, and implying to the OLR that his reinstatement petition was all but granted at the time he filed the complaint on behalf of L.S. (Count 4). By continuing to argue with Judge Costello at the October 17, 2011 hearing after Judge Costello had ruled that he would not grant the pro hac vice petition and by questioning the circuit court's authority to deny that petition, Attorney Boyle failed to maintain proper respect due to courts and judicial officers, in violation of the Attorney's Oath (SCR 40.15)[12] and SCR 20:8.4(g)[13] (Count 5). Finally, the referee concluded that Attorney Boyle had violated SCRs 22.03(6)[14] and 20:8.4(h)[15] by making false state-

[11] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[12] SCR 40.15, Attorney's Oath, provides, in part: "I will maintain the respect due to courts of justice and judicial officers."

[13] SCR 20:8.4(g) provides that it is professional misconduct for a lawyer to "violate the attorney's oath."

[14] SCR 22.03(6) provides that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[15] SCR 20:8.4(h) provides that it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a

ments to the OLR during its investigation, including that he had begun representing L.S. only two months before the statute of limitations expired, that he had been advised, recommended, and directed by the BBE director to file the pro hac vice petition as a way to represent L.S. while his Wisconsin law license was administratively suspended, and that his petition for reinstatement was pending at the time he filed his pro hac vice petition (Count 7).

¶ 42.  We first affirm the referee's declaration of default due to Attorney Boyle's failure to respond to the amended complaint. Although Attorney Boyle claimed before the referee that he had not received a copy of the OLR's amended complaint until after the deadline for a response had passed, the amended complaint was emailed and sent via first-class mail to addresses that Attorney Boyle had previously provided to the OLR and its counsel. There was no indication that those communications did not reach their intended destinations. Thus, a default judgment is appropriate in this instance, and the referee properly relied on the allegations of the amended complaint, which were deemed admitted. *See In re Disciplinary Proceedings Against Coplien,* 2010 WI 109, ¶ 10, 329 Wis. 2d 311, 788 N.W.2d 376. We therefore accept the referee's findings of fact based on the allegations of the amended complaint. We also agree with the referee that those findings of fact adequately support the legal conclusions of professional misconduct with respect to the five counts that relate to the Racine County civil action and the resulting OLR investigation.

grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

¶ 43. We next consider the appropriate level of discipline that should be imposed for the five counts of misconduct arising out of the Racine County action and the resulting OLR investigation. The OLR sought a 60–day suspension for all ten counts of misconduct alleged in its amended complaint. It believed that a 60–day suspension was necessary because, in its view, there had been a pattern of false statements by Attorney Boyle, the misconduct had occurred despite Attorney Boyle's lengthy experience as an attorney, there had been multiple offenses in two separate matters, and Attorney Boyle had refused to acknowledge his wrongdoing. The referee generally agreed with the OLR's reasons, but he recommended a 90–day suspension due to what he saw as inappropriate conduct by Attorney Boyle during the disciplinary case, including that Attorney Boyle had failed to appear for a telephonic conference, that he had become frustrated and had hung up during another teleconference, and that during the "prove-up" hearing Attorney Boyle had indicated that he would take the same actions in the Racine County matter all over again, which the referee viewed as a lack of remorse by Attorney Boyle.

¶ 44. The purpose of imposing professional discipline is to impress upon the attorney the seriousness of the misconduct, to deter other attorneys from engaging in similar misconduct, and to protect the public, the courts, and the legal system from a repetition of the misconduct. *See, e.g., In re Disciplinary Proceedings Against Grogan,* 2011 WI 7, ¶ 17, 331 Wis. 2d 341, 795 N.W.2d 745.

¶ 45. Under the particular circumstances of this case, we disagree with the OLR and the referee that a

suspension is required and conclude that a public reprimand is sufficient to accomplish these goals. As an initial matter, we are basing our decision upon the five counts of misconduct arising out of the Racine County matter rather than the ten counts the OLR and the referee were considering. While reducing the number of counts by one-half does not automatically mean that there should be a lower level of discipline, we determine that the misconduct in the only remaining matter here warrants a public reprimand.

¶ 46. While we accept the referee's findings of fact, including that Attorney Boyle engaged in the practice of law in this state while he was not authorized to do so and made some statements that were not true, those actions must be considered in their proper context to fashion a proper response. Here, the OLR acknowledged before the referee that there was no evidence of a dishonest or selfish motive. In the Racine County matter, the only one relevant to the issue of a sanction, Attorney Boyle was acting on a pro bono basis to assist a person with limited English skills, who had been unable to find another attorney willing to take on her case after her husband had been killed. While some of the time pressure he was under may have been of his own making, Attorney Boyle was attempting to investigate and file a claim for this widow before the statute of limitations expired. His goal of helping a person facing difficult obstacles does not excuse his misconduct, but it should be a factor in fashioning the proper response to the misconduct. We are not dealing here with a lawyer who is acting improperly for his own benefit, but rather with someone who acted overzealously and improperly while trying to help a disadvantaged person without compensation.

¶ 47. In addition, it is important to note that Attorney Boyle did make multiple attempts to contact the relevant agencies, both over the telephone and even in person, to determine how he could properly represent L.S. and get her case filed before the expiration of the statute of limitations despite his administrative suspension. While he ultimately chose the wrong path of filing a complaint and an amended complaint before obtaining any order authorizing him to engage once more in the practice of law in this state and before even petitioning for such an order, his attempts to seek guidance from the regulatory agencies demonstrate that he was not acting with complete disregard for the law and the ethical rules. He subsequently overstated what he had been told by those agencies, claiming that they had approved his course of action, but he did initially try to do the right thing.

¶ 48. Further, even the OLR's own investigative notes state that the BBE director, while not "approving" of the course of action as Attorney Boyle subsequently claimed to the circuit court, "probably planted the seed of admission pro hac vice in his mind." It is difficult to suspend an attorney who believed that he was following a course of action that had been at least proposed by a regulatory official and was never repudiated, even though he falsely claimed that the suggestion of a possibility constituted approval by the official when trying to convince a trial court to grant his pro hac vice petition.

¶ 49. We also comment on the referee's concern with Attorney Boyle's statement during the "prove-up" hearing that he would do it all over again as an expression of a lack of remorse. The context of that remark is important. It was not a blanket statement by Attorney Boyle that he would do everything the same

way if the situation arose again. The statement that he would do it all over again occurred just after he said that he was "absolutely responsible for filing that complaint to save the statute of limitations." He was therefore expressing that he acknowledged that he was responsible for the ramifications of his actions, but would be willing to suffer the consequences if it helped to protect his client's legal rights. The time and expense of this proceeding and the public reprimand that we are imposing are the ramifications that he must now endure.

¶ 50. In addition, it is worth noting that this is the first time in the approximately three decades since his admission to the practice of law in Wisconsin that Attorney Boyle has been the subject of professional discipline in this state. While the OLR may contend that as an experienced attorney Attorney Boyle should have known better, the length of his admission to practice in this state without prior discipline also means that he has not created a reason thus far to believe that the public must be protected from the risk of his misconduct. On the other hand, Attorney Boyle should understand that his experience as a lawyer should not be used as an excuse to ignore the particularities of the ethical rules and the local court rules that govern his conduct or to stretch the truth in an effort to pursue what he believes is a just outcome.

¶ 51. Attorney Boyle should also not construe this opinion as a vindication of his conduct. He violated the ethical rules governing his conduct, and deserves to be disciplined for that misconduct. We simply conclude that while Attorney Boyle violated his ethical obligations as an attorney, a public reprimand will be

sufficient to impress upon him the seriousness of his misconduct and to deter him from similar future ethical violations.

¶ 52. We turn now to the issue of costs.[16] The OLR has filed a statement showing total costs for this proceeding of $15,453.40 and recommending that this court impose the full amount of costs on Attorney Boyle. While we agree that Attorney Boyle should be responsible for the costs of the proceeding because it was his misconduct that caused this proceeding, we do not believe it is appropriate to impose the full amount of costs on him. The OLR filed an original complaint, to which Attorney Boyle ultimately responded. It then had to delay the proceeding and draft an amended complaint because it had relied on the incorrect ethical rules for some of the counts that arose out of the Northern District Court matter. The OLR's need to draft an amended complaint because of its error should not be Attorney Boyle's responsibility. Moreover, it was the filing and service of an amended complaint that led to additional disputes that ultimately resulted in the OLR filing a motion for a declaration of default. Further, because we have decided not to adjudicate the five counts arising from the Northern District Court matter at this time, it appears that there should be some reduction of the costs connected with those counts.

¶ 53. In addition, for unknown reasons, the referee believed that it was necessary to have an evidentiary "prove-up" hearing. Although it is not clear from the record what the referee thought such a hearing would entail, the OLR was apparently supposed to

---

[16] The OLR is not seeking any restitution award in this matter. It notes that the misconduct did not involve Attorney Boyle's possession of funds that should be returned to anyone.

offer testimony and/or documentary exhibits to prove the elements of the various counts in its complaint. That hearing ultimately resulted in substantial preparation and an evidentiary hearing that lasted for the better part of a day, as well as the filing of additional sets of proposed findings of fact and conclusions of law by counsel for the OLR.

¶ 54. We see no need for a "prove-up" hearing in this case. When a motion for default is granted in a civil action, a court often holds a hearing for the plaintiff to prove the damages that result from the defendant's conduct. Such a hearing, however, does not require testimony and documentary evidence on the merits of the elements of liability. Those elements are satisfied or not based on the allegations of the complaint, which are accepted as true due to the defendant's default. Moreover, the "prove-up" hearing that ultimately occurred in this case went well beyond even allowing the OLR to present evidence to support the allegations of the amended complaint.

¶ 55. We think that the need for an amended complaint and the occurrence of a "prove-up" hearing on a default constitute "[o]ther relevant circumstances" that support a reduction of the cost amount in this case. *See* SCR 22.24(1m)(f). Rather than require more litigation about what specific cost amounts should be eliminated, we conclude that it would be appropriate simply to reduce the requested cost amount by 40%, which will result in Attorney Boyle being required to pay costs of $9,272.04.

¶ 56. IT IS ORDERED that Charles A. Boyle is publicly reprimanded for his professional misconduct.

¶ 57.   IT IS FURTHER ORDERED that within 60 days of the date of this order, Charles A. Boyle shall pay to the Office of Lawyer Regulation costs in the amount of $9,272.04.

¶ 58.   IT IS FURTHER ORDERED that the director of the Office of Lawyer Regulation shall advise the court if there has not been full compliance with all conditions of this order.

¶ 59. ANN WALSH BRADLEY, J. (*dissenting*). The Office of Lawyer Regulation (OLR) requested a 60–day suspension of Attorney Boyle's license to practice law in Wisconsin for his misconduct in this case. Following a hearing, the referee recommended a 90–day suspension. Nevertheless, the per curiam opinion imposes only a public reprimand. Because I determine that a public reprimand is not sufficient discipline to address the gravity of the conduct, I respectfully dissent.

¶ 60.   I believe the per curiam understates Attorney Boyle's misrepresentations. I consider making false statements to a circuit court a grievous matter. *See* SCR 20:3.3 ("A lawyer shall not knowingly [] make a false statement of fact or law to a tribunal. . . .")

¶ 61.   Attorney Boyle told a circuit court judge that both the Board of Bar Examiners (BBE) director and the OLR director had signed off on his pro hac vice application. He specifically stated ". . . when we have the Supreme Court's Attorney Registration Director, when we have the Director of the Lawyers Regulation, okay, signing off on this . . . ." Attorney Boyle further asserted that "[t]he Office of Lawyer Regulation approved it, [and] the Office of Attorney Registration approved it . . . ."

¶ 62.   He told a second circuit court judge that he had been advised by the BBE to file a pro hac vice

petition, which was approved and filed by the OLR. Additionally, Attorney Boyle stated that he had begun representing L.S. only two months before the expiration of the applicable statute of limitations on August 8, 2011, when in fact it was more than four months.

¶ 63. There may be some confusion about what representatives of the BBE told Attorney Boyle. Yet, there is nothing in the record to indicate that the director of the OLR had any conversation about pro hac vice admission with Attorney Boyle. It is also uncontroverted that he began his representation of L.S. more than two months before August 8, 2011. He began representing her on or about March 23, 2011.

¶ 64. The per curiam attempts to mitigate the above misrepresentations by relying on Boyle's prior clean discipline record. However, this is only partially correct.

¶ 65. The per curiam rests its sanction determination, in part, on its finding that "this is the first time in the approximately three decades since his admission to the practice of law in Wisconsin that Attorney Boyle has been the subject of professional discipline in this state." Admittedly that is an accurate statement, but it does not reflect the whole picture.

¶ 66. Although Attorney Boyle has not previously been disciplined in this state, he has been disciplined elsewhere. This court was recently informed that the Illinois Supreme Court suspended Attorney Boyle's license in that state for 60 days, effective June 4, 2015, for conversion of settlement funds in a medical malpractice case.

¶ 67. The discipline had not been imposed at the time the OLR filed its complaint, or at the time of the hearing before the referee, but it has come to our attention during the pendency of the case before this

court. The per curiam should not justify imposing a lesser sanction on its statement that no prior discipline has been imposed in this state, when it is now aware of the Illinois suspension.

¶ 68. The per curiam also fails to fully reflect the whole picture regarding Attorney Boyle's conduct in the United States District Court for the Northern District of Illinois. His conduct came to OLR's attention during its investigation in this case. Allegations related to that conduct were included in the OLR's amended complaint and considered by the referee. I believe an explanation of those allegations is necessary to understand the recommendations made by both the OLR and the referee.

¶ 69. The OLR's amended complaint alleged and the referee considered five counts arising out of Attorney Boyle's actions in a civil case in the Northern District Court, in addition to the five counts relating to L.S. The per curiam dismisses the Northern District counts, and uses the dismissal as further support for its determination that a public reprimand is appropriate. In light of the fact that those counts were considered by the OLR and the referee in making their sanction recommendations, I believe there should be more than a cursory reference to those counts.

¶ 70. Essentially, in the Northern District matter, the OLR alleged that Attorney Boyle had falsely stated in an appearance form that he held membership in the Northern District Court's trial bar, which was necessary under that court's rules for him to appear by himself on behalf of the client in a bench trial. When the federal court informed him during the bench trial, however, that he was not listed as a member of the trial bar, Attorney Boyle responded that he was not aware of that fact and that he believed he was indeed

573

a member of the trial bar. Attorney Boyle explained that he had been appointed as lead counsel in certain Northern District Court cases following his stint as an Assistant United States Attorney and that he had also handled a four-and-a-half month trial in the Northern District Court. In subsequently arguing against an adjournment of the trial, Attorney Boyle became quite heated, refusing to accept the judge's ruling and at one point suggesting that the judge had a personal animus against him. Ultimately, the judge decided to adjourn the trial. Attorney Boyle submitted his application to the trial bar, which the judge granted a few days later.

¶ 71. In addition, the OLR alleged that when the trial reconvened, Attorney Boyle offered an exhibit that had been previously excluded from evidence under a different exhibit number without alerting the court and opposing counsel to that fact. When the OLR asked Attorney Boyle to provide a written explanation as to how this had occurred, he failed to provide a meaningful response. From these facts, the OLR brought five counts of misconduct against Attorney Boyle.

¶ 72. Although this court has jurisdiction to adjudicate disciplinary cases involving lawyers licensed to practice in this state regardless of where the alleged misconduct occurred, *see* SCR 20:8.5(a), the per curiam chooses not to exercise that jurisdiction in this case. The per curiam states that the alleged misconduct took place in a federal court located within the state of Illinois, but that it does not appear that either the Northern District Court nor the Illinois state regulatory authorities pursued discipline against Attorney Boyle for his apparent failure to understand that the rules regarding trial appearances in the Northern District Court had changed during the decades he had

574

been in practice and for his improper behavior when that matter was brought to his attention. The per curiam does not believe it is necessary or advisable in this instance for this court to take upon itself the primary role of adjudicating alleged misconduct that occurred in another jurisdiction and dismisses the five counts relating to that misconduct.

¶ 73. Because I consider making false statements to a court a grievous matter and given his prior discipline imposed by the Illinois Supreme Court, I conclude that a public reprimand imposed by the per curiam is inadequate discipline for Attorney Boyle's conduct. Additionally, because the OLR and referee's recommendations were based, in part, on the five Northern District Court counts, I believe more than a cursory reference to those counts is necessary to understand their recommendations.

¶ 74. For the foregoing reasons, I respectfully dissent.

¶ 75. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.