SHIRLEY S. ABRAHAMSON, J.
¶ 31. (concurring in part and dissenting in part). The OLR charged Attorney Roitburd with three violations of the Rules of Professional Conduct for Attorneys. I agree with the per curiam that the three violations were established by virtue of Attorney Roitburd's default in these proceedings. I also agree that Attorney Roitburd should pay the full costs of this disciplinary proceeding. I agree, finally, that Attorney Roitburd's compliance with all conditions imposed in the per curiam, including satisfaction of the judgment entered by the circuit court against him in Estate of Shirley Roitburd, Milwaukee County Case No. 06-PR-1840, should be required for reinstatement.
*110 ¶ 32. I disagree, however, with two aspects of the per curiam:
¶ 33. (I) I disagree with the four justices joining the OLR per curiam[1] blocking release of Justice David T. Prosser's separate writing and insisting that his writing be released at a later time. No basis exists for this action. Indeed, the four justices have violated the Supreme Court's Internal Operating Procedures (IOP).
¶ 34. (II) I disagree with the length of suspension imposed by the per curiam opinion. The per curiam grants Attorney Roitburd a 22-month reduction in the sanction requested in the OLR complaint to which he defaulted. There is no justification for this significant downward departure.
I
¶ 35. The per curiam insists that Justice Prosser's separate writing be held and not be released at the same time as the OLR per curiam. They want the per curiam to bear the notation "separate writing to follow."[2]
¶ 36. The instant OLR per curiam does not explain why Justice Prosser's separate writing will follow later rather than be released with the per curiam.
¶ 37. There is, however, only one possible explanation. The four justices must be relying on the proce *111 dure for opinion preparation and mandate adopted by a majority of the court in September 2014.[3]
¶ 38. The September 9, 2014 procedure for opinion preparation and mandate is set forth in the Supreme Court's Internal Operating Procedures (IOP) at II G. A reading of the plain language of IOP II G. demonstrates, however, that IOP II G. does not govern the instant OLR per curiam.
¶ 39. I have attached a copy of Internal Operating Procedure II G. as Attachment A.[4] Attachment A also includes paragraphs adjacent to IOP II G. to put II G. in context. Attachment A sets forth paragraphs E, F, G, and H of "II. Decisional Procedure — Appellate and Original Jurisdiction."
¶ 40. Apparently Justice Prosser's separate writing is viewed by the four justices as falling within IOP II G. 5 [5] and IOP II G. 6 [6] because Justice Prosser's *112 separate writing compares in general terms the instant case with a pending OLR case that raises similar issues.
¶ 41. I conclude that IOP II G. does not apply to OLR per curiam opinions. OLR per curiam opinions are governed by IOP II H. (entitled Per Curiam Opinion) and IOP III. (entitled Mandate).
¶ 42. I would follow the Internal Operating Procedures. Therefore the opinion in the instant OLR per curiam should not be released at this time. The per curiam in the instant OLR case and Justice Prosser's separate writing should be released at the same time as (or after) the other OLR per curiam to which Justice Prosser's separate writing refers.
¶ 43. Applying IOP II G. to the instant OLR per curiam violates the text of IOP II G. IOP II G. is written entirely in terms of opinions authored by a justice. See the text of IOP II G. set forth in Attachment A. OLR per curiams are not authored by a justice.
¶ 44. Furthermore, IOP II H. and IOP II I. explicitly govern the procedure to be followed for per curiam opinions in attorney disciplinary proceedings. IOP II H. provides (emphasis added):
H. Per Curiam Opinion
Per curiam opinions may be prepared by a justice or a court commissioner for consideration by the court. *113 Per curiam opinions injudicial and attorney disciplinary proceedings are prepared by a court commissioner for the court's consideration. The decisions in all cases are made by the court, and the per curiam opinions are reviewed by the entire court and are approved as to form and substance by the court prior to issuance.
¶ 45. IOP III. provides (emphasis added):
I. Mandate
The court's decision in a case is mandated promptly upon approval of the opinion by the court, as set forth above, and upon notification by the chief justice to the clerk, or upon notification by the author of the majority opinion if the chief justice is unable or unwilling to notify the clerk. The court's opinion is issued simultaneously with any concurring or dissenting opinions, unless concurring or dissenting opinion or opinions come within paragraph 5 above as "Separate Writing to Follow."
¶ 46. In contrast to IOP II G. 5., relating to "separate writing to follow," IOP II I. sets forth the general rule that a court's opinion is mandated simultaneously with any concurring or dissenting opinions (except when a concurring or dissenting opinion or opinions falls within section 5 of IOP II G.).
¶ 47. Here is how justice-authored opinions governed by IOP IIG. differ from OLR per curiam opinions:
• The September 2014 procedure speaks to a majority opinion authored by a justice. But an OLR per curiam is not authored by a justice.
• A justice-authored opinion is assigned to a justice by the court. In contrast, an OLR attorney discipline matter is assigned to a supreme court staff commissioner by the Clerk of the Supreme Court.
*114 • The justice who authors a majority opinion has been instructed with regard to the writing by the court. With regard to an OLR per curiam, the court commissioner recommends a resolution to the court. The court may accept or change the recommended resolution of the OLR matter. The commissioner drafts the per curiam and circulates it to the justices for approval or separate writings.
• Four justices must agree to hold a conference to discuss a draft of a justice-authored opinion. In contrast, four votes are not needed for a court conference on a circulated OLR per curiam opinion.
• The Internal Operating Procedures state procedures and time periods for circulating and mandating a justice-authored opinion. In contrast, an OLR per curiam and separate writings relating to the per curiam are not governed by the procedures or time periods set forth by IOP II G.
¶ 48. In sum, IOP II G. entitled "Opinions" relates to justice-authored majority and lead opinions. IOP II G. does not relate to OLR per curiams. OLR per curiams are governed by IOP II H. and IOP III.
¶ 49. Several justices have become so enamored with the "separate writing to follow" notation that they have threatened its use in situations that have no relationship to IOP II G. 5. In other words, they want to extend the "separate writing to follow" practice to separate writings that do not have anything to do with a pending case that has not yet been released.
¶ 50. For example, as I noted in my dissent to an order issued on December 4, 2015 in what is collec *115 tively known as "the John Doe trilogy,"[7] I was directed that any separate writing I prepared would not be issued along with the order unless I circulated my separate writing within a short time after the majority writing was circulated.[8] The same thing happened about a month later, with regard to another order in the John Doe trilogy that was issued on January 12, 2016.[9] Again I objected.
¶ 51. In both orders, I noted that the court's practice of using "separate writing to follow" serves to stifle minority views and full consideration of the case and in fact may encourage a later circulation of a separate writing.
¶ 52. In any event, this "separate writing to follow" intimidation in the John Doe trilogy violates IOPIIH. which clearly states as follows: "The court's opinion is issued simultaneously with any concurring or dissenting opinion or opinions, unless concurring or dissenting opinion or opinions come within paragraph 5 above as "separate writing to follow." In the John Doe *116 trilogy my separate writings made no reference to any pending but unreleased opinion.[10]
¶ 53. In sum, IOP II G. does not apply to OLR per curiams. Per curiam opinions relating to attorney discipline are governed by IOP II H. and IOP III.
¶ 54. Moreover, the "separate writing to follow" tool in IOP II G. 5. and IOP II G. 6. is peculiar to Wisconsin appellate practice. "Separate writing to follow" will be confusing to the litigants, readers of opinions, and publishers of opinions. It raises numerous problems. Under these circumstances, it is best to cabin "separate writing to follow," not expand it beyond its present borders.
I — I HH
¶ 55. I turn now to the length of suspension imposed by the per curiam. Attorney Roitburd has known since he received the OLR complaint that the OLR sought a two-year suspension. He has also known since he received the referee's report that the referee recommended a two-year suspension. Yet he has never questioned or challenged that recommended suspension. He has not been heard from whatsoever.
¶ 56. Problematically, the per curiam appears to give Attorney Roitburd the benefit of the doubts created by his own non-participation. The per curiam notes, for example, that we do not know all the facts concerning Attorney Roitburd's work as personal rep *117 resentative of his mother's estate, nor do we know the details of the estate itself. The per curiam holds open the possibility that Attorney Roitburd did not engage in dishonest or bad faith behavior at all. According to the per curiam, this uncertainty justifies an over 90% reduction in the OLR's and the referee's recommended suspension, even though Attorney Roitburd never made an appearance to oppose that suspension. Based on this result, a lawyer facing misconduct charges could hardly be blamed for believing that the best defense is no defense — indeed, no cooperation with the disciplinary process at all.
¶ 57. In my view, Attorney Roitburd cannot supply by default the grounds for a reduction of a sanction that he never opposed. It must be remembered that Attorney Roitburd has neither alleged nor offered any evidence from which any fact in his favor could possibly be found. There is also no claim that the facts alleged in the OLR's complaint, which the referee deemed admitted by virtue of Attorney Roitburd's default, are erroneous, much less clearly so. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747 (referee's findings of fact must be affirmed unless clearly erroneous).
¶ 58. We must therefore resolve this case with the understanding that the facts are exactly as the OLR alleges. Those facts include Attorney Roitburd's failure to return to his mother's estate over $43,000 in unaccounted-for assets; his repeated failure to appear at court hearings scheduled to discuss estate assets; the circuit court's issuance of a bench warrant for him; the circuit court's removal of him as personal representative; his repeated failure to meet with the successor personal representative to discuss estate assets; and his total refusal to cooperate with the OLR.
*118 ¶ 59. Our precedent shows that these facts merit a two-year license suspension. See, e.g., In re Disciplinary Proceedings Against Goldstein, 2010 WI 26, 323 Wis. 2d 706, 782 N.W.2d 388 (imposing a two-year suspension for misconduct that included converting nearly $70,000 from three probate estates for which the attorney served as special administrator or personal representative); In re Disciplinary Proceedings Against Krezminski, 2007 WI 21, 299 Wis. 2d 152, 727 N.W.2d 492 (imposing a two-year suspension for converting client funds that the lawyer held in his capacity as personal representative for an estate, knowingly offering false evidence, and failing to communicate with a client).
¶ 60. I would therefore order a two-year suspension. I would not do as the majority has done: construe the slimness of the default record — caused by Attorney Roitburd's total failure to join issue — as a mitigating circumstance. We recently explained that it is unnecessary for a referee to take evidence regarding the allegations of an OLR complaint after a declaration of default. See In re Disciplinary Proceedings Against Boyle, 2015 WI 90, ¶¶ 53-55, 364 Wis. 2d 544, 869 N.W.2d 475 (deeming unnecessary the referee's post-default "prove-up" hearing and reducing requested costs by 40% as a result). Today's decision teaches just the opposite.
¶ 61. For the reasons set forth, I dissent regarding the discipline.
¶ 62. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.
*119 [[Image here]]
*120 [[Image here]]
*121 [[Image here]]
*122 [[Image here]]
*123 [[Image here]]
*124 [[Image here]]

 I use the phrase "OLR per curiam" to refer to a per curiam in an attorney discipline proceedings prepared by a court commissioner. See Internal Operating Procedure (IOP) II H.

 Per curiam, ¶ 30.

 See State v. Gonzalez, 2014 WI 124, ¶¶ 30-31, 359 Wis. 2d 1, 856 N.W.2d 580 (Abrahamson, C.J., concurring) (setting forth in full the procedure adopted by the court and disagreeing with its adoption).

 The Supreme Court Internal Operating Procedures are printed in volume 6 of the Wisconsin Statutes.

 Section 5 of IOP II G. provides as follows relating to the "separate writing to follow" notation:
5. Separate Writings to Follow . If, during the course of a separate writing, the author cites to a case then pending before the court for which the opinion of the court has not been released, the majority opinion shall be released with the designation "separate opinion(s) to follow," unless the citation can be replaced with ellipses in which case the separate opinion shall be released with the majority opinion and the ellipses shall be replaced with the omitted citation when the cited opinion is released. There shall be no further changes to the separate writings after mandate. Separate writings for which the citation cannot be replaced with ellipses shall be released when the then unreleased decision that was cited in the separate opinion is released.

 Section 6 of IOP II G. provides as follows relating to the "separate writing to follow" notation:
6. Holds; Tying Together Release of Two Pending Cases . No one justice may block the release of a majority opinion by a "Hold." It shall take the affirmative vote of the majority of the participating justices to block the release of a majority opinion. No one justice may tie together the release of two pending cases. It shall take the affirmative vote of a majority of the participating justices in each case to tie together the release of two pending cases.

 The John Doe case comprises the following matters: Three Unnamed Petitioners v. Peterson, Nos. 2013AP2504-2508-W; Two Unnamed Petitioners v. Peterson, No. 2014AP296-OA; Schmitz v. Peterson, Nos. 2014AP427-421-W.

 Three Unnamed Petitioners v. Peterson, Nos. 2013AP2504-2508-W; Two Unnamed Petitioners v. Peterson, No. 2014AP296-OA; Schmitz v. Peterson, Nos. 2014AP427-421-W, unpublished order, ¶¶ 23-32 (Abrahamson, J., dissenting) (Dec. 4, 2015).

 Three UnnamedPetitionersv.Peterson, Nos.2013AP2504— 2508-W; Two Unnamed Petitioners v. Peterson, No. 2014AP296-OA; Schmitz v. Peterson, Nos. 2014AP427-421-W, unpublished order, ¶¶ 31-35 (Abrahamson, J., concurring in part and dissenting in part) (Jan. 12, 2016).

 I have also noted my objections to the court's recent failure to follow our IOPs in State v. Finley, No. 2014AP2488-CR, unpublished order (Jan. 11, 2016); Regency West Apts. LLC v. City of Racine, No. 2014AP2947, unpublished order (Jan. 11, 2016); and Wis. Carry, Inc. v. City of Madison, No. 2015AP146, unpublished order (Jan. 11, 2016).