# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2801-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Stuart F. Roitburd, Attorney at Law: |
| | Office of Lawyer Regulation, |
| |        Complainant, |
| |    v. |
| | Stuart R. Roitburd, |
| |        Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST ROITBURD

| | |
|---|---|
| OPINION FILED: | February 26, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | PROSSER, J. concurs (separate writing appended on May 20, 2016 to opinion filed February 26, 2016) |
|   DISSENTED: | ABRAHAMSON, A.W. BRADLEY, J.J., dissent. (Opinion Filed) |
|   NOT PARTICIPATING: | |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP2801-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Stuart F. Roitburd, Attorney at Law:**

**Office of Lawyer Regulation,**

   **Complainant,**

 **v.**

**Stuart R. Roitburd,**

   **Respondent.**

**FILED**

**FEB 26, 2016**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review Referee Christine Harris Taylor's recommendation that the court declare Attorney Stuart F. Roitburd in default and suspend his Wisconsin law license for a period of two years for professional misconduct in connection with his work as personal representative of his mother's estate and his non-cooperation with the Office of Lawyer Regulation's (OLR) investigation into that misconduct. The referee also

recommended that Attorney Roitburd be required to make restitution to his mother's estate in the amount of $43,369.74, and to pay the full costs of this proceeding, which total $1,120.29 as of August 11, 2015.

¶2 Because no appeal has been filed, we review the referee's report pursuant to Supreme Court Rule (SCR) 22.17(2).[1] After conducting our independent review of the matter, we agree with the referee that, based on Attorney Roitburd's failure to answer the complaint filed by the OLR, the OLR is entitled to a default judgment. However, we disagree with the referee that Attorney Roitburd's professional misconduct warrants a two-year suspension of his Wisconsin law license. We conclude, instead, that a 60-day suspension is warranted. We agree with the referee that Attorney Roitburd should be ordered to pay the full costs of the proceeding. We decline to order restitution for the reasons explained below.

¶3 Attorney Roitburd was admitted to practice law in Wisconsin in 1984. He had no disciplinary history prior to the filing of this complaint. According to the OLR's complaint, his

---

[1] SCR 22.17(2) provides:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

law license is currently suspended for failure to cooperate with the OLR in the investigation that gave rise to this proceeding.

¶4 On December 5, 2014, the OLR filed the current complaint against Attorney Roitburd. The complaint alleges three counts of professional misconduct in connection with his work as the personal representative of his mother's estate.

¶5 The following facts are taken from the OLR's complaint. Attorney Roitburd served as the personal representative of his father's estate and, beginning in 2006, of his mother's estate. This matter primarily concerns Attorney Roitburd's work as the personal representative of his mother's estate (hereafter, the "Roitburd Estate").

¶6 In April 2011, in connection with the final accounting of the Roitburd Estate, the circuit court administering the estate ordered Attorney Roitburd to make payments to certain creditors by early June 2011.

¶7 In late June 2011, an attorney appeared on Attorney Roitburd's behalf and informed the circuit court that there were errors in the final accounting and that Attorney Roitburd needed time to correct the errors.

¶8 The circuit court granted a lengthy adjournment. Attorney Roitburd failed to appear at the adjourned hearing date. The circuit court ordered Attorney Roitburd to appear at a subsequent hearing, which he failed to do.

¶9 In March 2012, the circuit court removed Attorney Roitburd as personal representative of the Roitburd Estate, appointed a different attorney to serve as successor personal

3

representative, and issued a bench warrant for Attorney Roitburd. Attorney Roitburd was taken into custody and later released on a signature bond.

¶10 At a subsequent court hearing, the successor personal representative testified that multiple assets had not been transferred from Attorney Roitburd's father's estate to his mother. Attorney Roitburd also canceled five meetings that the successor personal representative had scheduled for the purpose of discussing the estates of Attorney Roitburd's father and mother.

¶11 Attorney Roitburd stated he would return any unaccounted for assets to the Roitburd Estate by December 25, 2012, but failed to do so.

¶12 On motion from the successor personal representative, the circuit court entered an order to show cause for the return of estate assets. After a hearing at which both Attorney Roitburd and the successor personal representative testified, the circuit court ordered Attorney Roitburd to repay the Roitburd Estate $43,369.74 and to provide proof of payment of $13,000 in taxes by mid-March 2013. Although Attorney Roitburd ultimately provided proof that he had paid the $13,000 in taxes, he never paid the $43,369.74 to the Roitburd Estate. In April 2013, the circuit court entered an order and judgment finding Attorney Roitburd liable to the Roitburd Estate for $43,369.74. The judgment remains unsatisfied.

¶13 During the OLR investigation that gave rise to this proceeding, Attorney Roitburd failed to provide responses to the

4

OLR's repeated requests for information. On May 22, 2014, this court temporarily suspended Attorney Roitburd's license due to his willful failure to cooperate with the OLR's investigation. Attorney Roitburd's license has remained temporarily suspended to the date of this opinion.

¶14 Based on the course of conduct described above, the OLR alleged in its complaint that Attorney Roitburd knowingly disobeyed obligations under the rules of a tribunal, in violation of SCR 20:3.4(c)[2] (Count One); engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of SCR 20:8.4(c)[3] (Count Two); and failed to cooperate with the OLR investigation and to provide relevant information, answer questions fully, or furnish documents in the course of an OLR investigation, in violation of SCR 22.03(2)[4] and SCR 22.03(6),[5] enforced by SCR 20:8.4(h)[6] (Count Three).

---

[2] SCR 20:3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

[3] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4] SCR 22.03(2) provides:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may

(continued)

¶15 The OLR personally served the complaint and an order to answer on Attorney Roitburd. Attorney Roitburd failed to file an answer, and the OLR moved for default judgment.

¶16 The referee mailed a notice of a hearing on the OLR's motion for default judgment to Attorney Roitburd at his address on file with the State Bar of Wisconsin. Attorney Roitburd failed to appear for the hearing.

¶17 The referee issued a decision recommending that this court grant the OLR's motion for default judgment. In so doing, the referee deemed the allegations in the OLR's complaint to be established. The referee recommended a two-year suspension of Attorney Roitburd's Wisconsin law license, the imposition of the full costs of this proceeding against him, and the imposition of restitution to the Roitburd Estate in the amount of $43,369.74.

---

allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[5] SCR 22.03(6) provides that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[6] SCR 20:8.4(h) provides that it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

¶18 Attorney Roitburd did not appeal from the referee's report and recommendation. Thus, we proceed with our review of the matter pursuant to SCR 22.17(2). We review a referee's findings of fact subject to the clearly erroneous standard. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. We review the referee's conclusions of law de novo. Id. We determine the appropriate level of discipline independent of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶19 We agree with the referee that Attorney Roitburd should be declared in default. Although the OLR effected personal service of its complaint, and although Attorney Roitburd was given notice of the hearing on the motion for default judgment, he failed to appear or present a defense. Accordingly, we deem it appropriate to declare him in default. In addition, the referee properly relied on the allegations of the complaint, which were deemed admitted. See In re Disciplinary Proceedings Against Coplien, 2010 WI 109, ¶¶10-11, 329 Wis. 2d 311, 788 N.W.2d 376. We therefore accept the referee's findings of fact based on the allegations of the complaint. We also agree with the referee that those findings of fact adequately support the legal conclusions of professional misconduct with respect to the three counts of misconduct alleged in the complaint.

¶20 However, we disagree with the referee's recommendation that this court impose a two-year license suspension. As noted

7

above, it is ultimately this court's responsibility, rather than the referee's, to determine the appropriate level of discipline. See In re Disciplinary Proceedings Against Reitz, 2005 WI 39, ¶74, 279 Wis. 2d 550, 694 N.W.2d 894. We owe no deference to the referee's recommended sanctions. See In re Disciplinary Proceedings Against Carroll, 2001 WI 130, ¶37, 248 Wis. 2d 662, 636 N.W.2d 718. In considering the appropriate sanction, this court seeks to impress upon the attorney the seriousness of the misconduct, to deter other attorneys from engaging in similar misconduct, and to protect the public, the courts, and the legal system from a repetition of the misconduct. See, e.g., In re Disciplinary Proceedings Against Grogan, 2011 WI 7, ¶17, 331 Wis. 2d 341, 795 N.W.2d 745.

¶21 Under the unique circumstances of this case, we conclude that a 60-day suspension is sufficient to accomplish these goals. This is the first time in the more than three decades since Attorney Roitburd's admission to the Wisconsin bar that he has been the subject of professional discipline in this state. Until now, Attorney Roitburd has not created a reason to believe that the public, the courts, or the legal system must be protected from the risk of his misconduct. We note, too, that the three counts of misconduct at issue here do not evince an extensive pattern of indifference to our ethical rules. Finally, we note that our knowledge of Attorney Roitburd's misconduct is limited to the facts alleged in the OLR's complaint and established by Attorney Roitburd's default. As a result, there is much we do not know about his work as personal

8

representative of his mother's estate, and about the estate itself. For example, while we know that certain assets went unaccounted for, we do not know whether any mistakes Attorney Roitburd made in the administration of the estate rose to the level of dishonesty or bad faith. We do not know whether Attorney Roitburd was an heir to the estate, such that he might otherwise have been entitled to receive some amount of the assets at issue. We do not know whether his actions affected the rights and realization of payments to creditors of the estate.

¶22 We have, in the past, imposed far less than a two-year suspension for either comparable or more serious misconduct. For example, in In re Disciplinary Proceedings Against Fitzgerald, 2008 WI 101, 314 Wis. 2d 7, 752 N.W.2d 879, we suspended Attorney Fitzgerald's license for 60 days based on a six-count disciplinary complaint. The misconduct included Attorney Fitzgerald's appearing on behalf of clients during her law license suspension; billing the State Public Defender and accepting payment for appearances made on behalf of clients during her law license suspension; misleading a county clerk about her law license status; and failing to cooperate with the OLR. Our 60-day suspension of Attorney Fitzgerald's license followed a previous 90-day suspension for numerous instances of misconduct. In In re Disciplinary Proceedings Against Osicka, 2014 WI 33, 353 Wis. 2d 656, 847 N.W.2d 343, this court imposed a 60-day suspension based on Attorney Osicka's default to a four-count disciplinary complaint. The misconduct included

9

failing to place a client's advanced fee into a client trust account or to provide the notices required by the alternative advanced fee procedure; charging an unreasonable fee; failing to refund unearned fees; and failing to cooperate with the OLR. Our 60-day suspension of Attorney Osicka's license followed two previous public reprimands. Finally, in In re Disciplinary Proceedings Against Lamb, 2011 WI 101, 338 Wis. 2d 1, 806 N.W.2d 439, this court imposed a 60-day suspension for 21 counts of misconduct related to Attorney Lamb's handling of four client matters. Our 60-day suspension of Attorney Lamb's license followed a previous private reprimand.

¶23 In light of our resolutions of prior disciplinary actions, and in light of the unique circumstances of this case, we deem the OLR's and the referee's recommended two-year suspension to be excessive. To be clear, Attorney Roitburd should not construe this opinion as a vindication of any aspect of his misconduct or his failure to appear at any stage of these disciplinary proceedings. We simply conclude that, while Attorney Roitburd violated his ethical duties as an attorney, a 60-day suspension will be sufficient to accomplish the objectives of the lawyer disciplinary system.

¶24 As to the issue of restitution, the OLR requested and the referee recommended that this court order Attorney Roitburd to pay restitution to the Roitburd Estate in the amount of $43,369.74. However, we note that the OLR states in its complaint that the circuit court administering the estate has entered an order and judgment directing Attorney Roitburd to pay

10

the estate the amount of $43,369.74. Neither the OLR nor the referee explains why this court should order restitution that would duplicate that already ordered by the circuit court. We therefore deny the referee's recommendation for restitution. We deem it appropriate, however, to require, as a condition of the reinstatement of his Wisconsin law license, that Attorney Roitburd demonstrate to the court that he has satisfied the judgment entered by the circuit court against him in the Roitburd Estate.

¶25 Finally, we agree that Attorney Roitburd should pay the full costs of the proceeding.

¶26 IT IS ORDERED that the license of Stuart F. Roitburd to practice law in Wisconsin is suspended for a period of 60 days, effective April 26, 2016.

¶27 IT IS FURTHER ORDERED that the temporary license suspension of May 22, 2014, which arose out of Stuart F. Roitburd's willful failure to cooperate with the OLR's investigation in this matter, is lifted.

¶28 IT IS FURTHER ORDERED that within 60 days of the date of this order, Stuart F. Roitburd shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶29 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2). This requirement includes Stuart F. Roitburd's obligation to demonstrate to the court that he has satisfied the judgment entered by the circuit court against him in Estate of

11

Shirley Roitburd, Milwaukee County Case No. 06-PR-1840, as described above.

¶30 DAVID T. PROSSER, J. *(concurring).* This attorney discipline case is more than "problematic" because the facts are not clear.

¶31 Attorney Roitburd was named personal representative of his mother's estate. He had previously served as personal representative of his father's estate. Attorney Roitburd transferred many thousands of dollars from his mother's estate to his own accounts. Allegedly, he had earlier transferred money from his father's estate to himself so that it could not later be transferred to his mother. When these matters led to a discipline charge by the Office of Lawyer Regulation (OLR), Attorney Roitburd was not cooperative.

¶32 The majority opinion imposes a suspension of 60 days for his conduct; the concurring opinion of Justice Abrahamson would impose a suspension of two years. The latter suspension is the period of suspension that was sought by OLR and approved by the referee after a default judgment.

¶33 It is not uncommon for members of the court to disagree about the length of suspension for a disciplined attorney, but the difference between two months and two years is quite extraordinary. That difference must be grounded in two substantially different perceptions of the facts. When the facts are not clear, the court is forced to speculate about what the facts are or make assumptions about what the facts are, and those guesses or assumptions can be wrong.

¶34 Ironically, the court recently reviewed a separate but similar case that has been dismissed with no discipline. The

1

case involved an attorney who served as trustee for his father's estate, which was created to protect the attorney's mother. Without authorization, the attorney took approximately $360,000 from the trust to pay for his gambling. When third parties informed the attorney's mother and other members of the family, the family rallied around the attorney who promised to pay all the money back with interest. The attorney also cooperated with the OLR. See OLR v. Karabon, No. 2015AP183-D, which we also decide today.

¶35 The facts in the present case do not disclose what Attorney Roitburd's family thinks about his conduct. What we do know is that Attorney Roitburd did not cooperate with the OLR.

¶36 I believe that some discipline should be imposed in this case and that some discipline could have been imposed in the other case as well. How much discipline should be imposed in this case depends on facts we don't have. For that reason, I concur without a decision as to the amount of discipline.

¶37 SHIRLEY S. ABRAHAMSON, J. *(concurring in part and dissenting in part).* The OLR charged Attorney Roitburd with three violations of the Rules of Professional Conduct for Attorneys. I agree with the per curiam that the three violations were established by virtue of Attorney Roitburd's default in these proceedings. I also agree that Attorney Roitburd should pay the full costs of this disciplinary proceeding. I agree, finally, that Attorney Roitburd's compliance with all conditions imposed in the per curiam, including satisfaction of the judgment entered by the circuit court against him in Estate of Shirley Roitburd, Milwaukee County Case No. 06-PR-1840, should be required for reinstatement.

¶38 I disagree, however, with two aspects of the per curiam:

¶39 (I) I disagree with the four justices joining the OLR per curiam[1] blocking release of Justice David T. Prosser's separate writing and insisting that his writing be released at a later time. No basis exists for this action. Indeed, the four justices have violated the Supreme Court's Internal Operating Procedures (IOP).

¶40 (II) I disagree with the length of suspension imposed by the per curiam opinion. The per curiam grants Attorney Roitburd a 22-month reduction in the sanction requested in the

_____

[1] I use the phrase "OLR per curiam" to refer to a per curiam in an attorney discipline proceedings prepared by a court commissioner. See Internal Operating Procedure (IOP) II H.

1

OLR complaint to which he defaulted. There is no justification for this significant downward departure.

I

¶41 The per curiam insists that Justice Prosser's separate writing be held and not be released at the same time as the OLR per curiam. They want the per curiam to bear the notation "separate writing to follow."[2]

¶42 The instant OLR per curiam does not explain why Justice Prosser's separate writing will follow later rather than be released with the per curiam.

¶43 There is, however, only one possible explanation. The four justices must be relying on the procedure for opinion preparation and mandate adopted by a majority of the court in September 2014.[3]

¶44 The September 9, 2014 procedure for opinion preparation and mandate is set forth in the Supreme Court's Internal Operating Procedures (IOP) at II G. A reading of the plain language of IOP II G. demonstrates, however, that IOP II G. does not govern the instant OLR per curiam.

¶45 I have attached a copy of Internal Operating Procedure II G. as Attachment A.[4] Attachment A also includes paragraphs

---

[2] Per curiam, ¶30.

[3] See State v. Gonzalez, 2014 WI 124, ¶¶30-31, 359 Wis. 2d 1, 856 N.W.2d 580 (Abrahamson, C.J., concurring) (setting forth in full the procedure adopted by the court and disagreeing with its adoption).

[4] The Supreme Court Internal Operating Procedures are printed in volume 6 of the Wisconsin Statutes.

2

adjacent to IOP II G. to put II G. in context. Attachment A sets forth paragraphs E, F, G, and H of "II. Decisional Procedure—Appellate and Original Jurisdiction."

¶46 Apparently Justice Prosser's separate writing is viewed by the four justices as falling within IOP II G. 5[5] and IOP II G. 6[6] because Justice Prosser's separate writing compares in general terms the instant case with a pending OLR case that raises similar issues.

---

[5] Section 5 of IOP II G. provides as follows relating to the "separate writing to follow" notation:

> 5.  _Separate Writings to Follow_.  If, during the course of a separate writing, the author cites to a case then pending before the court for which the opinion of the court has not been released, the majority opinion shall be released with the designation "separate opinion(s) to follow," unless the citation can be replaced with ellipses in which case the separate opinion shall be released with the majority opinion and the ellipses shall be replaced with the omitted citation when the cited opinion is released.  There shall be no further changes to the separate writings after mandate.  Separate writings for which the citation cannot be replaced with ellipses shall be released when the then unreleased decision that was cited in the separate opinion is released.

[6] Section 6 of IOP II G. provides as follows relating to the "separate writing to follow" notation:

> 6.  _Holds; Tying Together Release of Two Pending Cases_.  No one justice may block the release of a majority opinion by a "Hold."  It shall take the affirmative vote of the majority of the participating justices to block the release of a majority opinion. No one justice may tie together the release of two pending cases.  It shall take the affirmative vote of a majority of the participating justices in each case to tie together the release of two pending cases.

¶47 I conclude that IOP II G. does not apply to OLR per curiam opinions. OLR per curiam opinions are governed by IOP II H. (entitled Per Curiam Opinion) and IOP II I. (entitled Mandate).

¶48 I would follow the Internal Operating Procedures. Therefore the opinion in the instant OLR per curiam should not be released at this time. The per curiam in the instant OLR case and Justice Prosser's separate writing should be released at the same time as (or after) the other OLR per curiam to which Justice Prosser's separate writing refers.

¶49 Applying IOP II G. to the instant OLR per curiam violates the text of IOP II G. IOP II G. is written entirely in terms of opinions authored by a justice. See the text of IOP II G. set forth in Attachment A. OLR per curiams are not authored by a justice.

¶50 Furthermore, IOP II H. and IOP II I. explicitly govern the procedure to be followed for per curiam opinions in attorney disciplinary proceedings. IOP II H. provides (emphasis added):

H. Per Curiam Opinion

Per curiam opinions may be prepared by a justice or a court commissioner for consideration by the court. _Per curiam opinions in judicial and attorney disciplinary proceedings are prepared by a court commissioner for the court's consideration._ The decisions in all cases are made by the court, and the per curiam opinions are reviewed by the entire court and are approved as to form and substance by the court prior to issuance.

¶51 IOP II I. provides (emphasis added):

I. Mandate

4

The court's decision in a case is mandated promptly upon approval of the opinion by the court, as set forth above, and upon notification by the chief justice to the clerk, or upon notification by the author of the majority opinion if the chief justice is unable or unwilling to notify the clerk. <u>The court's opinion is issued simultaneously with any concurring or dissenting opinions, unless concurring or dissenting opinion or opinions come within paragraph 5 above as "Separate Writing to Follow."</u>

¶52 In contrast to IOP II G. 5., relating to "separate writing to follow," IOP II I. sets forth the general rule that a court's opinion is mandated simultaneously with any concurring or dissenting opinions (except when a concurring or dissenting opinion or opinions falls within section 5 of IOP II G.).

¶53 Here is how justice-authored opinions governed by IOP II G. differ from OLR per curiam opinions:

- The September 2014 procedure speaks to a majority opinion authored by a justice. But an OLR per curiam is not authored by a justice.

- A justice-authored opinion is assigned to a justice by the court. In contrast, an OLR attorney discipline matter is assigned to a supreme court staff commissioner by the Clerk of the Supreme Court.

- The justice who authors a majority opinion has been instructed with regard to the writing by the court. With regard to an OLR per curiam, the court commissioner recommends a resolution to the court. The court may accept or change the recommended resolution of the OLR matter. The commissioner drafts the per curiam and circulates it to the justices for approval or separate writings.

5

- Four justices must agree to hold a conference to discuss a draft of a justice-authored opinion. In contrast, four votes are not needed for a court conference on a circulated OLR per curiam opinion.

- The Internal Operating Procedures state procedures and time periods for circulating and mandating a justice-authored opinion. In contrast, an OLR per curiam and separate writings relating to the per curiam are not governed by the procedures or time periods set forth by IOP II G.

¶54 In sum, IOP II G. entitled "Opinions" relates to justice-authored majority and lead opinions. IOP II G. does not relate to OLR per curiams. OLR per curiams are governed by IOP II H. and IOP II I.

¶55 Several justices have become so enamored with the "separate writing to follow" notation that they have threatened its use in situations that have no relationship to IOP II G. 5. In other words, they want to extend the "separate writing to follow" practice to separate writings that do not have anything to do with a pending case that has not yet been released.

¶56 For example, as I noted in my dissent to an order issued on December 4, 2015 in what is collectively known as "the John Doe trilogy,"[7] I was directed that any separate writing I

---

[7] The John Doe case comprises the following matters: _Three Unnamed Petitioners v. Peterson_, Nos. 2013AP2504-2508-W; _Two Unnamed Petitioners v. Peterson_, No. 2014AP296-OA; _Schmitz v. Peterson_, Nos. 2014AP427-421-W.

prepared would not be issued along with the order unless I circulated my separate writing within a short time after the majority writing was circulated.[8] The same thing happened about a month later, with regard to another order in the John Doe trilogy that was issued on January 12, 2016.[9] Again I objected.

¶57 In both orders, I noted that the court's practice of using "separate writing to follow" serves to stifle minority views and full consideration of the case and in fact may encourage a later circulation of a separate writing.

¶58 In any event, this "separate writing to follow" intimidation in the John Doe trilogy violates IOP II H. which clearly states as follows: "The court's opinion is issued simultaneously with any concurring or dissenting opinion or opinions, unless concurring or dissenting opinion or opinions come within paragraph 5 above as "separate writing to follow." In the John Doe trilogy my separate writings made no reference to any pending but unreleased opinion.[10]

---

[8] Three Unnamed Petitioners v. Peterson, Nos. 2013AP2504-2508-W; Two Unnamed Petitioners v. Peterson, No. 2014AP296-OA; Schmitz v. Peterson, Nos. 2014AP427-421-W, unpublished order, ¶¶23-32 (Abrahamson, J., dissenting) (Dec. 4, 2015).

[9] Three Unnamed Petitioners v. Peterson, Nos. 2013AP2504-2508-W; Two Unnamed Petitioners v. Peterson, No. 2014AP296-OA; Schmitz v. Peterson, Nos. 2014AP427-421-W, unpublished order, ¶¶31-35 (Abrahamson, J., concurring in part and dissenting in part) (Jan. 12, 2016).

[10] I have also noted my objections to the court's recent failure to follow our IOPs in State v. Finley, No. 2014AP2488-CR, unpublished order (Jan. 11, 2016); Regency West Apts. LLC v. City of Racine, No. 2014AP2947, unpublished order (Jan. 11, 2016); and Wis. Carry, Inc. v. City of Madison, No. 2015AP146, unpublished order (Jan. 11, 2016).

7

¶59 In sum, IOP II G. does not apply to OLR per curiams. Per curiam opinions relating to attorney discipline are governed by IOP II H. and IOP II I.

¶60 Moreover, the "separate writing to follow" tool in IOP II G. 5. and IOP II G. 6. is peculiar to Wisconsin appellate practice. "Separate writing to follow" will be confusing to the litigants, readers of opinions, and publishers of opinions. It raises numerous problems. Under these circumstances, it is best to cabin "separate writing to follow," not expand it beyond its present borders.

II

¶61 I turn now to the length of suspension imposed by the per curiam. Attorney Roitburd has known since he received the OLR complaint that the OLR sought a two-year suspension. He has also known since he received the referee's report that the referee recommended a two-year suspension. Yet he has never questioned or challenged that recommended suspension. He has not been heard from whatsoever.

¶62 Problematically, the per curiam appears to give Attorney Roitburd the benefit of the doubts created by his own non-participation. The per curiam notes, for example, that we do not know all the facts concerning Attorney Roitburd's work as personal representative of his mother's estate, nor do we know the details of the estate itself. The per curiam holds open the possibility that Attorney Roitburd did not engage in dishonest or bad faith behavior at all. According to the per curiam, this uncertainty justifies an over 90% reduction in the OLR's and the

referee's recommended suspension, even though Attorney Roitburd never made an appearance to oppose that suspension. Based on this result, a lawyer facing misconduct charges could hardly be blamed for believing that the best defense is no defense—indeed, no cooperation with the disciplinary process at all.

¶63 In my view, Attorney Roitburd cannot supply by default the grounds for a reduction of a sanction that he never opposed. It must be remembered that Attorney Roitburd has neither alleged nor offered any evidence from which any fact in his favor could possibly be found. There is also no claim that the facts alleged in the OLR's complaint, which the referee deemed admitted by virtue of Attorney Roitburd's default, are erroneous, much less clearly so. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747 (referee's findings of fact must be affirmed unless clearly erroneous).

¶64 We must therefore resolve this case with the understanding that the facts are exactly as the OLR alleges. Those facts include Attorney Roitburd's failure to return to his mother's estate over $43,000 in unaccounted-for assets; his repeated failure to appear at court hearings scheduled to discuss estate assets; the circuit court's issuance of a bench warrant for him; the circuit court's removal of him as personal representative; his repeated failure to meet with the successor personal representative to discuss estate assets; and his total refusal to cooperate with the OLR.

¶65 Our precedent shows that these facts merit a two-year license suspension. See, e.g., In re Disciplinary Proceedings Against Goldstein, 2010 WI 26, 323 Wis. 2d 706, 782 N.W.2d 388 (imposing a two-year suspension for misconduct that included converting nearly $70,000 from three probate estates for which the attorney served as special administrator or personal representative); In re Disciplinary Proceedings Against Krezminski, 2007 WI 21, 299 Wis. 2d 152, 727 N.W.2d 492 (imposing a two-year suspension for converting client funds that the lawyer held in his capacity as personal representative for an estate, knowingly offering false evidence, and failing to communicate with a client).

¶66 I would therefore order a two-year suspension. I would not do as the majority has done: construe the slimness of the default record——caused by Attorney Roitburd's total failure to join issue——as a mitigating circumstance. We recently explained that it is unnecessary for a referee to take evidence regarding the allegations of an OLR complaint after a declaration of default. See In re Disciplinary Proceedings Against Boyle, 2015 WI 90, ¶¶53-55, 364 Wis. 2d 544, 869 N.W.2d 475 (deeming unnecessary the referee's post-default "prove-up" hearing and reducing requested costs by 40% as a result). Today's decision teaches just the opposite.

¶67 For the reasons set forth, I dissent regarding the discipline.

¶68 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

**ATTACHMENT A**
**SUPREME COURT INTERNAL OPERATING PROCEDURES**

## II. DECISIONAL PROCESS – APPELLATE AND ORIGINAL JURISDICTION

. . . .

### E. Post-argument Decision Conference

Following each day's oral arguments, the court meets in conference to discuss the cases argued that day. The chief justice presides at the conference, conducts the court's discussion, and calls for the vote on the decision of each case.

For each case, the justice to whom the case was assigned for

16

presentation at the pre-argument conference gives his or her analysis and recommendation, the court discusses the issues in the case, and the vote of each member of the court on the decision is taken, beginning with the justice who has given the recommendation. When possible, the court reaches a decision in each of the cases argued that day, but any decision is tentative until the decision is mandated. Prior to a tentative decision, any justice may have a case held for further consideration and discussion. Following the court's tentative decision, any justice may request reconferencing for further discussion of the case. In a week following the oral arguments, the court decides the cases (usually discipline cases) on the month's submission calendar that are not decided at post-argument conference.

### F. Assignment of Cases

Immediately after the court reaches its tentative decision in a case, whether at post-argument decision conference or at a succeeding conference, the case is assigned to a member of the court for preparation of the court's opinion. No case is assigned to a justice until after oral argument and after the court has reached its tentative decision.

Each month at least one case is assigned for opinion writing to each justice; an additional case may be assigned to any justice after all justices have been assigned at least one case. Cases are assigned by lot: each justice is assigned a number from one to seven according to seniority, and the next senior justice to the chief justice draws one of seven numbered tokens lying numbered-side down on the conference table. The number drawn for each case determines the justice to whom the writing of the opinion is assigned. A case is assigned only to a

17

justice who has voted with the majority. In the event a justice to whom a case has been assigned subsequently decides to change his or her vote on the decision of the case and ceases to be among the majority, he or she may withdraw from the assignment; the case is then reassigned by lot to a justice who is among the majority, and another case is assigned to the justice who has withdrawn.

After the cases are assigned, the justice prepares a draft opinion for circulation to the court.

### G. Opinion

1. *Justice Declarations.* Within 10 days after the first circulation of a majority opinion, each justice shall declare by email to all justices participating in the case in one of four ways: (1) joining the opinion; (2) joining the opinion if specifically described changes are made; (3) concurring; or (4) dissenting.

2. *Majority Opinion.* Within 10 days of receiving a request for specifically described changes, the author of the majority opinion shall consult among members of the majority to determine whether some or all of the specifically described changes are acceptable. If some or all are acceptable, the majority opinion shall be revised and recirculated within 14 days after the initial 10 day consultation period. If some or all of the specifically described changes are not acceptable to the majority who support the first circulation, the justice whose changes were not accepted shall declare by email that he or she joins the majority opinion, notwithstanding the lack of changes that were requested, or that he or she will write separately. A justice who asked for changes in the majority opinion and does not join the majority opinion shall declare a

18

13

concurrence or dissent and circulate his or her separate writing within 21 days of circulation of the revised majority opinion or the determination that the majority opinion will not be revised to meet his or her request, whichever occurs first.

3. *Separate Writings.* Whether concurring or dissenting, a justice who declares a separate writing in response to the first circulation of a majority opinion has 30 days after the justice's declaration to circulate his or her separate writing. No new majority opinions shall be circulated by justices who are writing separately.

4. *Revisions to Majority Opinions; Procedure for Mandating Opinions.* Upon circulation of a separate opinion, the author of the majority opinion has 14 days in which to revise, and upon receipt of those revisions, dissents and concurrences have 14 days to respond to the majority's revision. The revision of dissents and concurrences shall not create a new opinion, but shall respond only to revisions in the majority opinion. Upon recirculation of the majority opinion and recirculation of the separate writings, each justice shall, within 10 days, by email to all justices participating in the case make a final declaration of which opinion he or she is joining. If during this process the opinion originally circulated as the majority opinion does not garner the vote of a majority of the court, it shall be referred to in separate writings as the "lead opinion." If a separate writing garners the vote of a majority of the court, thereby changing the mandate of the opinion, it shall be revised as the majority opinion within 14 days of the vote of the court. During that same 14 day period, other separate writings shall be revised to indicate their status as concurrences or dissents to the new majority opinion. The

14

majority opinion and the separate writings shall be mandated upon final declaration.

Within 5 days of the mandate, the majority opinion shall be placed in the release drive; within 5 days after that event, the separate writings also shall be placed in the release drive for transmittal of all writings to the clerk's office for release to the public, unless release of separate writings is delayed as required by step 5 below.

5. *Separate Writings to Follow.* If, during the course of a separate writing, the author cites to a case then pending before the court for which the opinion of the court has not been released, the majority opinion shall be released with the designation "separate opinion(s) to follow," unless the citation can be replaced with ellipses in which case the separate opinion shall be released with the majority opinion and the ellipses shall be replaced with the omitted citation when the cited opinion is released. There shall be no further changes to the separate writings after mandate. Separate writings for which the citation cannot be replaced with ellipses shall be released when the then unreleased decision that was cited in the separate opinion is released.

6. *Holds; Tying Together Release of Two Pending Cases.* No one justice may block the release of a majority opinion by a "Hold." It shall take the affirmative vote of the majority of the participating justices to block the release of a majority opinion. No one justice may tie together the release of two pending cases. It shall take the affirmative vote of a majority of the participating justices in each case to tie together the release of two pending cases.

7. *Circulation Dates for Majority Opinions.* Majority opinions

20

15

assigned in September, October and November shall be circulated no later than January 31. Majority opinions assigned in December, January and February shall be circulated no later than March 31, Majority opinions assigned in March and April shall be circulated no later than May 31.

8. *Court Conferences on Circulated Opinions.* There will be no court conferences on circulated opinions unless a majority of justices participating in the case request court conference on the circulated opinion(s) in that case.

### H. Per Curiam Opinion

Per curiam opinions may be prepared by a justice or a court commissioner for consideration by the court. Per curiam opinions in judicial and attorney disciplinary proceedings are prepared by a court commissioner for the court's consideration. The decisions in all cases are made by the court, and the per curiam opinions are reviewed by the entire court and are approved as to form and substance by the court prior to issuance.

### I. Mandate

The court's decision in a case is mandated promptly upon approval of the opinion by the court, as set forth above, and upon notification by the chief justice to the clerk, or upon notification by the author of the majority opinion if the chief justice is unable or unwilling to notify the clerk. The court's opinion is issued simultaneously with any concurring or dissenting opinions, unless concurring or dissenting opinion or opinions come within paragraph 5 above as "Separate Writing to Follow."

21